JOHN A. KUBANYI and Estate of NORA KUBANYI, Deceased, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kubanyi v. Commissioner
Docket No. 7557-77.
United States Tax Court
T.C. Memo 1981-398; 1981 Tax Ct. Memo LEXIS 350; 42 T.C.M. (CCH) 554; T.C.M. (RIA) 81398; July 30, 1981. Harry B. Fay III, for the petitioners. Matthew W. Stanley, for the respondent. FEATHERSTON
MEMORANDUM OPINION FEATHERSTON, Judge: Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax under section 6653(b) [1] as follows: Addition to Tax
(sec. 6653(b),
Year
Deficiency
I.R.C. 1954)
1968
$ 1,468
$ 734
1969
8,909
4,455
1970
8,655
4,328
1971
7,340
3,670
1972
6,552
3,276
All the evidence *351 has been stipulated, and we interpret petitioners' brief to concede the correctness of the determinations of tax deficiencies. The only issue for decision is whether any part of the underpayments of tax reflected by those deficiencies was due to fraud within the meaning of section 6653(b). At all times pertinent to this case, petitioner John A. Kubanyi (hereinafter petitioner) was a legal resident of Fairbanks, Alaska. Petitioner's wife, Nora, died in 1975, and no probate proceedings were instituted in her case. Petitioner and Nora filed joint Federal income tax returns for the years in controversy with the Internal Revenue Service Center, Ogden, Utah. During 1968 through 1972, petitioner was employed as a utility man at the Clear Air Force Base (the base) in Alaska. In 1972, State of Alaska law enforcement authorities received information to the effect that petitioner was engaged in gambling activities at the base, and they initiated an investigaion. The investigation disclosed that petitioner was engaged in a number of gambling activities from which he profited. In 1973, petitioner was indicted on charges of illegally selling tickets or shares in lotteries. He entered *352 a plea of nolocontendere to those charges. During 1968 through 1972, his gambling activities included sporting pools (boxing, football, and baseball), card games (poker, pan, and gin), and dice games. In the income tax returns filed by petitioner and Nora for 1968 through 1972, the profits from petitioner's gambling activities were not reported as income. The following table shows the amounts of income reported and the amounts of net gambling winnings not reported for those years together with the percentage of the gross income understatements: Percentage of
Unreported Net
Gross Income
Year
Reported Income
Gambling Profits
Understatements
1968
$ 14,008
$ 6,674
32
1969
14,805
27,514
65
1970
14,991
30,017
67
1971
12,708
27,645
69
1972
14,650
23,564
61
The joint income tax returns for these years [2] were prepared by H & R Block Company, Fairbanks, Alaska. Following company policy, the H & R Block employees who prepared the respective returns asked petitioner whether he had any income or deductions other than the income items he had identified to them as income to be reported. To each such inquiry petitioner responded *353 that no other income had been received. He did not mention his gambling profits. On August 23, 1976, petitioner pleaded guilty to charges that he filed returns for 1969, 1970, and 1971, containing false statements as to the amount of his income in violation of section 7206(1). On August 24, 1976, judgment was entered convicting him of those charges. The burdenof proof on the issue of fraud, of course, rests with respondent. He must prove by clear and convincing evidence that petitioner omitted his gambling income with the specific purpose to evade a tax believed to be owing. , affg. a Memorandum Opinion of this Court; . *354 The trial record here includes numerous statements and investigation reports, and it is stipulated that the individuals who gave those statements would testif to the facts therein stated if they were called as witnesses. Rarely is there a direct admission of fraud, and the trial record as a whole must, therefore, be weighed to ascertain whether it clearly and convincingly shows intentional wrongdoing. We begin with the fact that petitioner has stipulated that he omitted from his reported gross income a total of over $ 115,000 in gambling profits during the 5-year period in controversy. The omissions averaged over $ 23,000 per year. A comparison of the amounts of reported income with unreported gambling profits shows that annual percentages of understatements of gross income ranged from 32 percent to as high as 69 percent. It is true, as petitioner emphasizes, that a mere understatement of income does not establish fraud, but the unexplained omission of such large percentages of his income in each of 5 years is a factor which must be taken into account. Ruidoso Racing, affg. in part and remg. *355 in part (on grounds not material to the issue here presented) a Memorandum Opinion of this Court. Repeated substantial understatements of substantial income over successive years has been said to constitute evidence of fraudulent intent. , affg. a Memorandum Opinion of this Court. We think, moreover, the only reasonable inference is that petitioner knowingly concealed his gambling income and purposely failed to report it. The record contains affidavits of three employees of H & R Block who prepared the joint income tax returns for 1968 and 1971, 1970, and 1972, respectively, and it is stipulated that if these employees were called as witnesses they would testify as stated in their respective affidavits that they followed company policy in preparing petitioner's income tax returns and that they asked petitioner whether he had other income. He denied that he had other income and did not mention his gambling income. There is no evidence to suggest that petitioner was not fully aware that his gambling profits were taxable. Indeed, he pleaded guilty to charges of having filed income tax returns for 1969, *356 1970, and 1971 which he did not believe to be true and correct in that they materially understated his income. There is no evidence of any omissions of income other than his gambling profits for those years, and his pattern of gambling activities and of filing tax returns were the same for 1969, the only year not covered by the H & R Block employee affidavits, as for the other 4 years. We can only conclude that petitioner deliberately omitted his gambling profits for the purpose of evading a tax which he believed to be owing and that he is liable for the section 6653(b) additions to tax as well as the deficiencies recomputed to give effect to the additional deductions described in footnote 2, supra. ; [3]
As to Nora Kubanyi, we note that the notice of deficiency was addressed to petitioner and "Estate of Nora Kubanyi, Deceased." See sec. 301.6212-1(b), Proced. & Admin. Regs. The caption of the petition and other Court papers designate as petitioners "John A. Kubanyi and Estate of Nora Kubanyi, *357 Deceased." But there has been no administration of her estate and thus there is no evidence that petitioner or anyone else was authorized to file this action or to prosecute it on behalf of Nora's estate. We conclude that the Court lacks jurisdiction as to her liability, and the action will be dismissed as to the Estate of Nora Kubanyi, Deceased, for lack of jurisdiction. As to petitioner John A. Kubanyi, Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.↩
2. It is stipulated that in 1972 petitioner and his wife made contributions of $ 100 to the Fairbanks Little League and $ 20 to the March of Dimes (which they did not claim as deductions). It is also stipulated that in 1971 petitioner and his wife are entitled to a $ 1,000 capital loss carryover deduction instead of the $ 810 capital gain reported. These items were allowed as deductions in the notice of deficiency.↩
3. See and compare .↩